IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ARNOLD WEBER, et al.,              §
                                   §
                 Plaintiffs,       §
                                   §  Civil Action No. 3:06-CV-0267-D
VS.                                §
                                   §
MERRILL LYNCH PIERCE FENNER        §
& SMITH, INC.,                     §
                                   §
                 Defendant.        §

MEMORANDUM OPINION
AND ORDER

    Plaintiffs move to vacate an arbitration award based on
allegations of evident partiality and arbitrator misconduct.  For
the reasons that follow, the court denies the motion.

I

    Plaintiffs Arnold and Maureen Weber, The Weber Family Trust,
Adam Joseph Weber Trust, Nicholas Arman Weber Trust, and Zachary M.
Weber Trust (collectively, "the Webers") filed an arbitration
complaint with the New York Stock Exchange ("NYSE") against
defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill
Lynch").  They alleged that Merrill Lynch had made unsuitable
investment recommendations over a period of several years.  Under
the terms of the Webers's account agreement, their claims were
subject to mandatory, binding arbitration.

    NYSE appointed the initial arbitration panel.  When one of the
original arbitrators removed himself, NYSE appointed Dean P. Guerin
("Arbitrator Guerin") as a replacement.  NYSE notified the parties

of this change and enclosed in the notice Arbitrator Guerin's profile, disclosing that his "[s]ocial memberships include the Dallas Country Club."  Ps. Reply App. Ex. C.[1]

Immediately following Arbitrator Guerin's appointment, and at later times, the Webers objected to his acting as an arbitrator, based on his membership in the Dallas Country Club.  Robert Cecil ("R. Cecil") and his son Blake Cecil ("B. Cecil"), who were potential witnesses in the case and were among the Merrill Lynch brokers who managed the Webers's accounts, also belonged to the Dallas Country Club, as did their wives.  The Webers's counsel asserted in a letter that Arbitrator Guerin's "long time friendship with the Cecil family should be grounds for him to recuse himself."  Ps. Mot. to Vacate Arbitration Award Ex. D.[2]  In response, Merrill Lynch acknowledged that R. Cecil knew who Arbitrator Guerin was, based on his reputation in the Dallas investment community, and that he had met him several years before at a non-Dallas Country Club function.  But it contended that, although they were both

---

[1]In support of the reply brief that the court by June 14, 2006 order permitted them to file, plaintiffs submitted an appendix organized according to exhibits.  They did not, as N.D. Tex. Civ. R. 7.1(i)(4) requires, number each page in the lower, right-hand corner, with the first page numbered as "1" and the succeeding pages numbered sequentially through the last page of the entire appendix.  The court therefore cites the appendix according to its exhibit designation rather than by its specific page number.

[2]The Webers do not cite evidence that permits the finding that Arbitrator Guerin and the Cecils in fact had a long time friendship.

members of the Dallas Country Club, R. Cecil did not know Arbitrator Guerin personally. The Arbitration Panel denied the Webers's cause-based challenge to Arbitrator Guerin.

The Webers later sought permission from the Panel to amend their complaint to add as parties individual Merrill Lynch employees (including R. Cecil and B. Cecil) and a financial advisor (and his employer) who had advised Merrill Lynch concerning half of the Webers's investments. They also requested that the hearing be transferred from Dallas to New York City. The Panel declined to allow the proposed amendment. The Webers also made several requests that Merrill Lynch produce its compliance manual, but the Panel refused to order it to do so. The Webers contend that when, in violation of NYSE Rules of Arbitration, Merrill Lynch produced for the first time at the arbitration hearing the handwritten notes of B. Cecil, the Panel permitted the notes to be admitted into evidence while refusing to admit "significant portions of [the Webers's] evidence" that similarly violated NYSE Rules. Ps. Mot. to Vacate Arbitration Award 6-7. Following a five-day arbitration hearing, the Panel denied the Webers's claims in all respects.

The Webers move the court to vacate the arbitration award under 9 U.S.C. § 10(a). They contend, first, that Arbitrator Guerin was a member of the same country club as were the Cecils (and their spouses), resulting in evident partiality, and, under NYSE Rules, he should have disclosed having met them, any social

relationship that might reasonably create an appearance of partiality or bias, any personal relationship with someone who he had been told would be a witness, and any such relationship with a family member; he failed to make these disclosures related to the Cecils (and their spouses); and he should have been disqualified as an arbitrator.[3]  Second, they urge the Arbitration Panel's refusal to grant their motion to amend to add as parties four individual stock brokers employed by Merrill Lynch, and the financial advisors on whom Merrill Lynch relied, was an abuse of discretion and another example of evident partiality and misconduct.  Third, they maintain that the Arbitration Panel engaged in misconduct by unfairly refusing to hear pertinent and material evidence.  They complain that the Panel refused to require Merrill Lynch to produce a full and complete copy of its compliance manual, and that, in violation of NYSE Rule 619(c), it permitted Merrill Lynch to introduce handwritten notes that B. Cecil took at the time of the initial interview, but, based on alleged violations of the same Rule, excluded significant portions of the Webers's evidence, thus evidencing obvious partiality and prejudicing their ability to obtain a fair hearing.

---

[3]The Webers also assert that it does not appear they were given a peremptory challenge to which they were entitled by NYSE rule.  They do not, however, clearly rely on this as a ground for obtaining vacatur of the award.  And Merrill Lynch has demonstrated that, under the Random List Selection Method that the NYSE used in this case, a party does not have a peremptory strike against a replacement arbitrator.

In their reply brief,[4] which the court directed them to file after Merrill Lynch had responded to their motion to vacate, the Webers raise for the first time the claim that the award should be vacated under § 10(a)(4) because Arbitrator Guerin did not disclose his wife's social memberships in six civic and social organizations to which R. Cecil's wife also belongs, thus rendering him unqualified under NYSE Rules to sit as an arbitrator.

## II

Review of an arbitration award is "exceedingly deferential." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004) (citing *Glover v. IBP, Inc.*, 334 F.3d 471, 473 (5th Cir. 2003)). The court can vacate an award "only on very narrow grounds." *Id.* (citing *Glover*, 334 F.3d at 473-74). The standard "has been described as 'among the narrowest known to the law.'" *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 726 (N.D. Tex. 1997) (Fitzwater, J.) (quoting *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995)). "The court may not vacate the [arbitrator's] award based on mere errors in interpretation or application of the law, or mistakes in factfinding." *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). "Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." *Id.*

---

[4]The Webers filed a combined brief and reply brief. In its June 14, 2006 order, however, the court directed them to file a reply brief.

(quoting *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995)).  "An arbitrator's erroneous interpretations or applications of law are not reversible." *Id.* (quoting *ARW Exploration Corp.*, 45 F.3d at 1463).  "By consenting to arbitration, parties exchange 'the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  The question the court asks is "whether the arbitration proceedings were fundamentally unfair." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir. 1990) (citing *Teamsters, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir. 1984)).

Section 10(a) of the FAA sets forth the grounds for vacatur of an arbitration award.  Under § 10(a), the court may vacate an award in these circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  The party moving to vacate an arbitration award

has the burden of proof. *Lummus Global Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.*, 256 F.Supp.2d 594, 604 (S.D. Tex. 2002) (citing *Spector v. Torenberg*, 852 F. Supp. 201, 206 (S.D.N.Y. 1994)).   The court must resolve any doubts or uncertainties in favor of upholding the award. *Brabham*, 376 F.3d at 385 n.9 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir. 2004)).

III

The court first considers the Webers's contention that the award must be vacated under § 10(a)(2) based on the evident partiality of Arbitrator Guerin.

A

The Webers can establish evident partiality by demonstrating either that he failed to disclose relevant facts or that he displayed actual bias at the arbitration proceeding. *See Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998); *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996).   In a failure to disclose case, the integrity of the process by which arbitrators are chosen is at issue; in an actual bias case, the integrity of the arbitrators' decision is at issue. *See Woods,* 78 F.3d at 427.   Thus the standard a court uses to evaluate a claim of evident partiality varies depending on whether the party seeking to vacate the award argues nondisclosure or actual bias.

B

- 7 -

In their motion, the Webers attempt to demonstrate evident partiality on the grounds that Arbitrator Guerin was a member of the same country club as were the Cecils and their spouses, and that, under NYSE Rules, he should disclosed having once met R. Cecil.

Because Arbitrator Guerin disclosed his membership in the Dallas Country Club and Merrill Lynch disclosed in advance of the hearing that R. Cecil had once met Arbitrator Guerin at a non-Dallas Country Club function, the Webers were aware of these facts before the hearing and moved to disqualify him on these grounds. Accordingly, they cannot establish evident partiality based on the alleged nondisclosure of these facts.

C

The Webers are therefore limited to arguing that Arbitrator Guerin displayed actual bias at the arbitration proceeding.  The court decides this question using an objective standard to determine whether they have shown actual bias.  *See Mantle*, 956 F. Supp. at 729; *see id.* at 728 (rejecting "'appearance of bias' as the relevant standard where nondisclosure is not alleged" (citing *Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994))).

Under this standard, "[t]he part[ies] asserting evident partiality ha[ve] the burden of proof." *Id.* at 729 (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993)).  They must establish that "'a reasonable person

would have to conclude that the arbitrator was partial to one party,'" *id.* (quoting *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)), and they must do so by "produc[ing] specific facts," *id.* "[T]he alleged partiality must be 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'" *Id.* (citing *Peoples Sec. Life*, 991 F.2d at 146). Thus "there is an onerous burden on a party urging vacatur based on evident partiality." *Id.* (citing *Peoples Sec. Life*, 991 F.2d at 146).

The Webers have not met their onerous burden. The court will assume *arguendo* that they have presented adequate record evidence of the Panel's rulings and have not relied on a selective presentation of but a few rulings made over the course of lengthy pre-hearing proceedings and during a multi-day hearing. They rely on the Panel's decisions concerning their motion to amend, their request for production of the Merrill Lynch compliance manual, and the admissibility of evidence to contend that the Panel as a whole, and Arbitrator Guerin in particular, showed evident partiality. At most, the Webers have shown that the Panel ruled against them in these respects. They have not demonstrated under the demanding standard that a reasonable person would have to conclude that the Panel and/or Arbitrator Guerin was partial to Merrill Lynch. "Even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation." *Sheet*

*Metal Workers Int'l Ass'n Local Union #420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) (citing *Bell Aerospace Co. v. Local 516, Int'l Union, UAW*, 500 F.2d 921, 923 (2d Cir. 1974)).

D

In an argument raised for the first time in their reply brief, the Webers maintain that Arbitrator Guerin did not disclose his wife's memberships in six civic and social organizations to which R. Cecil's wife also belongs, thus rendering him unqualified under NYSE Rules to sit as an arbitrator. They contend that this relationship and Arbitrator Guerin's failure to disclose it establish evident partiality and require that the court vacate the arbitration award. The Webers also posit that, because Arbitrator Guerin failed to disclose material information about his and his family's social relationships with the Cecils, he was not qualified under the NYSE Rules to sit as an arbitrator and he exceeded his powers by making an award, in turn violating § 5 of the FAA and justifying vacatur under § 10(a)(4).

1

Merrill Lynch moves to strike the Webers's argument and supporting evidence on the ground that they were presented for the first time in their combined brief and reply brief. The court grants the motion.

The Webers did not properly raise this basis for vacatur in

their motion to vacate arbitration award.  It is well established that "a movant should not be permitted to cure by way of reply what is in fact a defective motion." *Springs Indus., Inc. v. Am. Motorists Ins. Co.,* 137 F.R.D. 238, 240 (N.D. Tex. 1991) (Fitzwater, J.).  Moreover, the court can decline to consider an argument raised for first time in a reply brief. *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.).  The court directed the Webers to file a reply brief; it did not grant them leave to raise new grounds for vacatur or to introduce new evidence.  Because the Webers have in effect used their reply brief to supplement their motion and to add a new basis for vacatur, the court concludes that the new argument and supporting evidence should be stricken.

2

Even if the court were to consider this argument and the supporting evidence, however, it would hold that the Webers have failed to demonstrate that the arbitration award should be vacated under § 10(a)(4).  This is because they provide no controlling authority for the proposition that an arbitrator's nondisclosure requires vacatur on this basis.  The Webers rely principally on the district court's decision in *Bulko v. Morgan Stanley DW, Inc.*, 2004 WL 2973760 (N.D. Tex. Dec. 20, 2004) (Sanders, J.), *rev'd, Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622 (5th Cir. 2006).  In *Bulko* the

district court vacated an arbitration award under § 10(a)(4) on the
basis that the industry arbitrator in a National Association of
Securities Dealers Inc. ("NASD") arbitration had failed to disclose
information showing she was not qualified to be an industry
arbitrator under NASD rules.  *Id.* at *2.   The Fifth Circuit
reversed and rendered, concluding that the NASD was the appropriate
body to determine the eligibility of its arbitrators and that any
alleged departure from the NASD rules was trivial.  *Bulko,* 450 F.3d
at 626 ("In the absence of a specific agreement to the contrary,
determining [the arbitrator's] qualifications and eligibility is a
matter left to the NASD.") (quoting *Howsam v. Dean Witter Reynolds,
Inc.*, 537 U.S. 79, 85 (2002)).  Therefore, the Webers's reliance on
§ 10(a)(4) would lack force even had they properly raised it.

     Additionally, when an arbitrator fails to disclose some fact
tending to show bias, the court must decide whether this failure
warrants vacatur of the arbitration decision under § 10(a).  Courts
require the party challenging the arbitration award to establish
that the undisclosed facts create a "reasonable impression of
partiality."  *See Schmitz*, 20 F.3d at 1046 (finding that "'evident
partiality' is present when undisclosed facts show 'a reasonable
impression of partiality.'" (quoting *Middlesex Mut. Ins. Co. v.
Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982) (per curiam))).  The
Webers have not alleged sufficient facts to establish that the
various social memberships of Mmes. Guerin and Cecil create a

reasonable impression of partiality.

Courts have found that a reasonable impression of partiality is established when the arbitrator has had a direct business or professional relationship with one of the parties to the arbitration. For example, in *Schmitz* the Ninth Circuit found that a reasonable impression of partiality was established when an arbitrator failed to disclose that his law firm had previously represented the parent company of one of the parties to the arbitration. *Schmitz*, 20 F.3d at 1049. Similarly, in *Middlesex Mutual Insurance Co.* the Eleventh Circuit affirmed vacatur of an arbitration award based on a reasonable impression of partiality when the arbitrator had a family-owned insurance company that had been entangled in a "direct and substantial financial relationship" with two of the three defendant insurance companies in the arbitration proceedings. *Middlesex Mut. Ins. Co.*, 675 F.2d at 1202; *see also Olson v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 51 F.3d 157, 159 (8th Cir. 1995) (finding reasonable impression of partiality where arbitrator failed to disclose that his employer did "substantial amount of business with" party to arbitration proceedings). Courts have also found that a reasonable impression of partiality arises when arbitrators fail to disclose the professional positions of their family members when the positions were closely related to a party to the arbitration. *See, e.g., Morelite*, 748 F.2d at 84-85 (vacating arbitration award under

"reasonable person" standard when arbitrator did not disclose the fact that his son was an officer of one party to the arbitration).

The alleged relationship with which the Webers take issue is between the spouse of the arbitrator and the spouse of a Merrill Lynch broker involved in the management of the Webers's accounts. The Webers cite no record evidence that Mmes. Guerin and Cecil even knew each other, much less that they had a personal relationship before or during the arbitration proceeding. Their membership in the same six civic and social organizations does not of itself rise to the level of a reasonable impression of partiality, and courts have not vacated arbitration award based on such attenuated relationships. *See, e.g. Apusento Garden (Guam), Inc. v. Superior Court of Guam*, 94 F.3d 1346, 1353 (9th Cir. 1996) (holding that arbitrator's failure to disclose that he and one of the parties' expert witnesses were limited partners in partnership that owned apartment complex did not create objectively reasonable impression of bias); *Consolidation Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995) (finding per se bias not established when arbitrator did not disclose that his brother was employed by international union whose district was involved in arbitration); *United States Wrestling Fed. v. Wrestling Div. of the AAU*, 605 F.2d 313, 320 (7th Cir. 1979) (finding that connections that chairman of arbitration panel and his law firm had with university that, in turn, had connections with party to arbitration

proceeding was too "remote, uncertain, and speculative" to require vacatur of arbitration decision).

Accordingly, even had the Webers properly raised the mutual social memberships of Mmes. Guerin and Cecil as a basis for demonstrating evident partiality, the court would conclude that they have failed to establish it.

IV

The court now considers the Webers's contention that the award should be vacated because the Panel committed misconduct in refusing to grant their motion to amend the complaint to add as parties four individual stock brokers employed by Merrill Lynch and the financial advisors on whom Merrill Lynch relied. They maintain that the Panel abused its discretion and engaged in evident partiality and misconduct.

A

"Arbitration proceedings are not constrained by formal rules of procedure or evidence." *Mantle*, 956 F. Supp. at 730 (citing *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992)). "By agreeing to arbitration, a party trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.* (citing *Mitsubishi Motors,* 473 U.S. at 628). "Arbitrators should be expected to act affirmatively to simplify and expedite the proceedings before them." *Id.* (citing *Forsythe Int'l,* 915 F.2d at 1022). "Courts reviewing arbitral

awards may not superimpose rigorous procedural limitations upon the conduct of the arbitrators." *Id.* at 730-31 (citing *Forsythe Int'l,* 915 F.2d at 1022). Arbitrators "need provide only a fundamentally fair hearing." *Id.* at 730 (citing *Totem Marine Tug & Barge Inc. v. N. Am. Towing, Inc.,* 607 F.2d 649, 651 (5th Cir. 1979)).

B

The Webers allege that the Panel's denial of their motion to amend their complaint is misconduct that justifies vacating the arbitration award. They contend the decision was an abuse of discretion and another example of evident partiality, considering the timing of the request and the fact that no prejudice would arise from adding the new parties. When the Webers filed their motion to amend, however, the case had twice been set for final hearing and was almost two years old. The Webers attempted to add six additional respondents, and the Panel could reasonably have concluded that none of the six was a necessary party for the Webers to obtain complete relief. They also sought to amend over six months after the motion deadline. And the only connection between New York City and the case was the location of the Webers's new counsel. The Webers have not shown an abuse of discretion or evident partiality.

Moreover, as Merrill Lynch correctly argues, "[c]ourts will not vacate an arbitration award based upon an evidentiary or procedural ruling when the party challenging the decision does not

specifically describe the resulting prejudice or produce evidence of the resulting prejudice." D. Br. 17; *see Schmidt v. Finberg*, 942 F.2d 1571, 1574 (11th Cir. 1991) (rejecting argument that arbitrators committed misconduct in denying continuance when party "did not express a single word to indicate what testimony [the absent party] would give that would be material to the issues raised in the claim"); *Young v. Alagna*, 2000 WL 472863, at *5 (N.D. Tex. Apr. 24, 2000) (Fish, J.) (finding that claim of arbitrator misconduct by depriving plaintiff of opportunity to be heard "[rang] hollow" because plaintiff "never indicated what his response on the merits would have been."). The Webers assess the Panel's ruling from the perspective of whether Merrill Lynch would have been prejudiced had leave to amend been granted. They have failed, however, to describe specifically the resulting prejudice or to produce evidence of the resulting prejudice inflicted upon them by the denial of their motion to amend. Thus they have not met their burden of showing that the Panel decision resulted in prejudice and to warrant vacating the award based on the Panel's denial of the motion for leave to amend.

V

Finally, the Webers seek vacatur under § 10(a)(3) based on the Panel's evidentiary rulings. They maintain that the Arbitration Panel engaged in misconduct and evidenced obvious partiality by unfairly refusing to require Merrill Lynch to produce a full and

complete copy of its compliance manual and by applying Rule 619(c) inconsistently by permitting Merrill Lynch to introduce handwritten notes of B. Cecil while excluding significant portions of the Webers's evidence.

A

"Submission of disputes to arbitration always risks procedural and evidentiary shortcuts." *Mantle*, 956 F. Supp. at 731 (citing *Forsythe Int'l*, 915 F.2d at 1022). To warrant vacatur, however, plaintiffs must make an adequate showing of prejudice. *Id.* "Absent exceptional circumstances . . . a reviewing court may not overturn an arbitration award based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties." *Pac. Breakwater W., Inc. v. Wellness Int'l Network, Ltd.,* 2000 WL 276812, at *3 (N.D. Tex. Mar. 9, 2000) (Fitzwater, J.) (quoting *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 39-40 (1st Cir. 1985)). "Arbitration awards will not be set aside due to the arbitrator's refusal to hear evidence unless the exclusion of the contested evidence prevented the parties from receiving a fundamentally fair hearing." *Id.* (quoting *Castleman v. AFC Enters., Inc*, 995 F. Supp 649, 653 (N.D. Tex. 1997) (Sanders, J.)).

B

The court will assume *arguendo* that the Webers preserved this claim by objecting during the arbitration hearing. Even so, they

- 18 -

have not demonstrated the relevance of the Merrill Lynch compliance manual or of the excluded evidence. Nor have they shown that the exclusion prejudiced them or prevented them from obtaining a fair hearing. They rely on the fact that the Panel's ruling resulted in excluding the entire testimony of their expert witness, Alan Goldfarb, but they do not attempt to explain how the ruling prejudiced them or deprived them of the opportunity to present their case in a meaningful manner. *See Mantle*, 956 F. Supp. at 732. Nor have the Webers demonstrated why the admission of B. Cecil's handwritten notes prejudiced them. *See id.* at 731. Consequently, they are not entitled to vacate the award on this basis. Nor have they shown evident partiality based on the Panel's rulings. Accordingly, they have not demonstrated that the award should be vacated on this ground.

\*        \*        \*

Because the Webers have not met their burden of demonstrating evident partiality or of misconduct by the Panel, their motion to vacate arbitration award is denied.

**SO ORDERED.**

August 31, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE